IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ondre Trevez Hunter, ) | |
| ) | Civil Action No. 6:16-473-MGL-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Kenny Boone, Joyce Brunson, and ) | |
| Teresa Cunningham, ) | |
| ) | |
| Defendants. ) | |
| ) | |

   This matter is before the court on the defendants' motion for summary judgment (doc. 36) and the plaintiff's motion for default judgment (doc. 28). The plaintiff is a state prisoner proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

   The plaintiff filed a motion for default judgment on May 15, 2016 (doc. 28), to which the defendants filed a response in opposition on June 1, 2016 (doc. 33). The defendants filed a motion for summary judgment on June 6, 2016 (doc. 36). On that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 37). The plaintiff filed a response in opposition to the motion on July 8, 2016 (doc. 43).

## FACTS PRESENTED

   The plaintiff alleges that while he was a pretrial detainee at the Florence County Detention Center ("FCDC") the defendants, all of whom are employed by the Florence County Sheriff's Office, violated his constitutional rights by failing to credit back money taken from his prison account for canteen items he never received because he was

sent to "lockup" (doc. 1 at 3-4). According to the plaintiff, he was sent to lockup (also known as maximum-segregation or "max-seg") on November 24, 2015, after having ordered just over $33.00 worth of commissary items (*id.*). He alleges that he was in max-seg when the commissary items arrived at the FCDC and that he was unable to receive the commissary items, but the defendants refused to credit back the money taken from his account (*id.*).

The plaintiff references the FCDC's commissary policy in his complaint (*id.* at 4). According to Section 19 of the FCDC Inmate Handbook, if an inmate is sent to max-seg after ordering items from the commissary/canteen, that inmate has five business days to have the ordered items picked up or those items will be discarded (doc. 36-2, Cunningham aff. ¶ 3 & att. A ). Section 19 of the FCDC Inmate Handbook states the following:

> 19. Commissary/Canteen
> Commissary deliveries are normally on Fridays. Commissary can be purchased by phone or kiosk machine with your pin number from Thursday night until Wednesday night via telephone. You must have money in your inmate account before commissary is ordered. If you order more than your available balance, the order will cancel when the limit is reached. **You are limited to $40.00 worth of non-food items and $40.00 worth of food items**. You will be required to sign a receipt upon receiving your commissary order. Food items may be eaten in your room **ONLY** and are not to be brought out of your room for any reason. **Exchanging giving away or gambling with commissary items will result in disciplinary action. Excess commissary items will be confiscated. If you are released prior to receiving your ordered commissary you will have (5) business days to have it picked up or it will be discarded. If you are sent to Max-Seg. You have (5) business days to have it picked up or it will be discarded**.

(*Id.*, att. A (emphasis in original)).

The plaintiff attached to his complaint an inmate request dated February 4, 2016, in which he complained that he had made a commissary request before being sent to lockup, and the money was taken from his account. He stated that he never received the items, and, therefore, the money should be returned to his account (doc. 1-1). Defendant

2

Cunningham responded to the inmate request stating that, under the FCDC's rules, it was the plaintiff's responsibility to get someone to pick up the commissary items within the allowed business days, and, as the plaintiff did not do this, his account would not be credited (*id.*).

The plaintiff alleges that the application of the FCDC's commissary policy constitutes cruel and unusual punishment in violation of the United States Constitution and that the actions of the defendants constitute negligence (docs. 1 & 27, construed together as amended complaint per doc. 30). He seeks compensatory and punitive damages and injunctive relief (doc. 1 at 5).

Defendant Cunningham is the FCDC's Officer Manager (doc. 36-2, Cunningham aff. ¶ 1), and defendant Brunson is a Captain who is responsible for the day to day operations of the FCDC (doc. 36-3, Brunson aff. ¶ 1). Defendant Boone is the Florence County Sheriff (doc. 1 at 2).

## **APPLICABLE LAW AND ANALYSIS**

*Plaintiff's Motion for Default Judgment*

The plaintiff has filed a motion for default judgment against all defendants (doc. 28). Federal Rule of Civil Procedure 55(a) provides that when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b) provides that a party must then apply to the court for a default judgment. *Id.* 55(b). The defendants were served with the summons and complaint on March 9, 2016, and timely filed their answer on March 23, 2016 (docs. 14, 17). Accordingly, the motion for default is meritless. The plaintiff states in the motion that he objects to the defendants' motion for extension of time to file dispositive motions, which was granted in part by the undersigned on May 5, 2016 (doc. 24). The deadline was extended until June 6, 2016, and the defendants timely filed their motion on that date (doc. 36). The request for extension of a motions deadline, as well as the court's

decision in its discretion to grant said extension, is not relevant to the issue of whether the defendants are in default. As set forth above, the defendants timely filed their responsive pleadings and are not in default. Accordingly, the motion (doc. 28) should be denied.

***Defendants' Motion for Summary Judgment***

The defendants have moved for summary judgment as to all causes of action alleged against them (doc. 36). Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Conditions of Confinement*

Claims that detention center officials were deliberately indifferent to the conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). The due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Id*. To determine whether a prison official has violated a prisoner's Eighth Amendment right to humane conditions of confinement, a court must determine "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d. 756, 761 (4th Cir. 1996). The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id*.

The plaintiff alleges that he ordered commissary items, but he never received them because he was in max-seg. He further alleges that he was never given an opportunity to sign a receipt for the commissary items (doc. 1 at 4). The FCDC's commissary policy clearly states that an inmate has five days within which to ask someone to claim his commissary items if he is sent to max-seg (doc. 36-2, Cunningham aff. ¶ 3 & att. A ). The plain language of the rule clearly indicates the required procedure if a detainee orders commissary and is then sent to max-seg, and, as argued by the defendants, the plaintiff simply failed to follow that procedure. According to Captain Brunson, all inmates

have access to the Inmate Handbook, which includes the policy in question (doc 36-3, Brunson aff. ¶ 2). Based upon the foregoing, the defendants' motion for summary judgment should be granted as to this cause of action because the plaintiff has failed to demonstrate that the FCDC commissary policy creates unconstitutional conditions of confinement.

### *Eleventh Amendment*

The defendants argue that they are entitled to Eleventh Amendment immunity in their official capacities. The undersigned agrees. The Eleventh Amendment to the United States Constitution divests this court of jurisdiction to entertain a suit for damages brought against the State of South Carolina, its integral parts, or its officials in their official capacities, by a citizen of South Carolina or a citizen of another state. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999). Such immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). While sovereign immunity does not bar suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions apply in the instant case. Accordingly, the plaintiff's claims for damages should be dismissed against the defendants in their official capacities.

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, they are entitled to qualified immunity.

### *Respondeat Superior and Supervisory Liability*

Here, the plaintiff has failed to allege any personal involvement by defendants Captain Brunson and Sheriff Boone. He simply makes the conclusory allegations that "Kenny Boone is responsible for all his officers' conduct" and "Joyce Brunson has a better understanding about FCDC policy and procedures since she's over it" (doc. 1, p.4). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct).

Further, to the extent the plaintiff alleges that Captain Brunson and Sheriff Boone are liable under a theory of *respondeat superior* for the actions of other employees, that doctrine is generally inapplicable to Section 1983 claims. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir. 1977) (doctrine of *respondeat superior* has no application under § 1983).

In order to proceed on a supervisory liability theory, the plaintiff must show: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). In *Randall v. Prince George's County*, the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw*, 13 F.3d at 799). Furthermore, in establishing deliberate indifference under *Shaw's* second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id*. (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

The plaintiff is unable to make a showing that there has been any conduct by anyone posing any constitutional injury to him, much less evidence of widespread conduct of that type. The plaintiff also makes no showing that a subordinate was engaged in widespread conduct risking pervasive and unreasonable harm to him, nor is there any showing that the plaintiff has been exposed to such a risk on several different occasions. The plaintiff has not provided any specific allegations of any incidents occurring that would alert defendants Boone or Brunson to a subordinate's misconduct. The plaintiff has not made the required showing, so he cannot proceed in federal court under a theory of supervisor liability.

***Negligence***

The plaintiff amended his complaint to allege a state law claim of negligence against the defendants (docs. 27, 30). The South Carolina Tort Claims Act provides that a person bringing an action under the Act "shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted." S.C. Code Ann. §15-78-70(c). However, "[i]n the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant." *Id*. Accordingly, any state law claims should have been brought against the governmental entity, and the individually named defendants are entitled to summary judgment as to the plaintiff's state law claims against them.[1]

Even construing the negligence claim as being alleged against Florence County, summary judgment is appropriate. While South Carolina has waived sovereign immunity in many cases, it has retained a number certain enumerated exceptions to the waiver of immunity. The Act provides that "The governmental entity is not liable for a loss resulting from . . . (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code §15-78-60(25). Gross negligence is "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do" or "the failure to exercise slight care." *Steinke v. S.C. Dept. of Labor, Licensing and Regulation*, 520 S.E.2d 142, 153 (S.C. 1999)

---

[1] There is no allegation or evidence that the individual defendants acted outside the scope of their employment or acted with actual fraud, actual malice, intent to harm, or a crime involving moral turpitude so as to enable the plaintiff to pursue his claims against the defendants individually. S.C. Code Ann. § 15-78-70(b).

9

(citations omitted).  The plaintiff has provided no evidence of any grossly negligent conduct on the part of the defendants with regard to the facts and circumstances of this case. As such, the County - if substituted as the party defendant – would be entitled to state sovereign immunity on the plaintiff's negligence claim.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that the district court grant the defendants' motion for summary judgment (doc. 36) and deny the plaintiff's motion for default judgment (doc. 28).  Should the district court adopt this court's recommendation, any pending nondispositive motions will be rendered moot.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

January 18, 2017
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).